**GENERAL TIRE AND RUBBER COMPANY, MAYFIELD DIVISION, Appellant,**

v.

**Gerald RULE and the Workmen's Compensation Board of Kentucky, Appellees.**

Court of Appeals of Kentucky.

March 31, 1972.

L. M. Tipton Reed, Jr., Neely, Reed & Brien, Mayfield, for appellant.

J. William Graves, James W. Owens, Owens & Graves, Paducah, for appellee Rule.

EDWARD P. HILL, Jr., Judge.

This is an appeal from a judgment affirming an opinion and order of the Workmen's Compensation Board awarding appellee Gerald Rule compensation for fifty percent (50%) permanent partial disability for 400 weeks by reason of a back injury Rule claims he sustained April 27, 1970. Also awarded were temporary total disability benefits, 32 days of which are questioned on this appeal. We affirm.

Appellant divides its argument into three parts, the second and third parts of which are that the findings of the Board on temporary total as well as on permanent partial disability are not supported by the evidence. The first argument is that the Board erred in the interpretation of the evidence on the question of the permanency of Rule's disability. It argues that there is no positive evidence that the disability is permanent.

The admitted facts are these: Appellee Rule, a 30-year-old high-school graduate, worked for appellant nearly eight years before his claimed injury as a result of lifting a heavy object. The claimed injury occurred about 10:40 a. m. He reported to the plant nurse where he was given aspirin. After lunch hour, he complained his condition worsened and was sent to the plant infirmary. From there he was removed to the Fuller-Gilliam Hospital in Mayfield, Kentucky, where he remained for treatment for a period of five days. The resident physician at this hospital referred Rule to Dr. E. Jeff Justis, Jr., an

orthopedic surgeon on the staff of ·the Campbell Clinic in Memphis, Tennessee.

Appellee Rule returned to work July 13, 1970, but on July 22, 1970, he had to leave work. On August 7, 1970, he again consulted Dr. Justis and reported that he had resumed work but shortly thereafter he had had a "flare-up." After this Rule consulted his attorney who directed him to Dr. Kenton D. Leatherman of Louisville, Kentucky, also an orthopedic surgeon.

Dr. Justis diagnosed Rule's condition as "lumbosacral strain."

Dr. Leatherman's diagnosis agreed that Rule had received a "lumbosacral sprain with a low grade disk lesion at the L-5 level." He explained "low grade disk lesion" as "involvement of the lumbosacral disk without necessarily a so-called ruptured disk."

Appellant insinuates that Rule complained of two or three back injuries previous to the claimed injury of April 1970, and Dr. Leatherman testified that Rule gave a history of a previous back injury "six or seven years ago."

Appellant's first argument is that the Board's findings of fact state that Dr. Leatherman testified that Rule had a 50% permanent partial disability "to the body as a whole"; whereas, his testimony cannot be so construed, as it states: "[I]t would be my opinion that this man presently is fifty percent disabled on a functional impairment basis."

■ That Rule has some disability, or did have when the medical evidence was given, there can be little doubt. The real ground of contention is on the question of whether there was substantial evidence to support the Board's finding of permanency. Inasmuch as appellant's third argument requires the weighing of the evidence on this question, we shall return later in this opinion to this proposition. However, we should comment here on appellant's first argument as it concerns the Board's finding of permanency of the disability in the face of Dr. Leatherman's testimony that Rule's 50% permanent partial disability was "functional." First of all, it should be noted that it is the function of the Board to translate "functional" disability into "occupational" disability. See Adkins v. Caney Branch Coal Co., Ky., 459 S.W.2d 771 (1970). The Board had before it the record which disclosed the physical requirements of claimant's occupation and other evidence of other factors important to a determination of occupational disability.

■ Up to this writing, neither this court nor the Workmen's Compensation Board has catalogued the factors that should govern the Board in determining "occupational" disability. Obviously some of those factors would be the physical requirements of the employment, the nature of the injury as it may affect the ability of the injured man to perform the particular duties of his employment, and the age of the claimant. There may be others.

■ The Board was not bound to fix Rule's occupational disability at the same percentage as the medical evidence established his functional disability, although it did just that. The Board could have, in the exercise of a sound discretion, fixed occupational disability below, the same as, or greater than the functional disability shown in the medical evidence. Kilgore v. Goose Creek Coal Company, Ky., 392 S.W.2d 78, and Adkins v. Caney Branch Coal Company, Ky., 459 S.W.2d 771.

■ We next discuss appellant's argument that the Board erred in allowing compensation for temporary total disability from November 6, 1970, to December 8, 1970. This sounds like peanuts, especially when it is recognized that appellant's argument in this respect is based on the alleged failure of claimant to comply with a policy of the company regarding the contents of a letter from a doctor, required by appellant before it would put claimant

back to work. It is not shown that claimant was notified or aware of the policy of the company. We find no merit in this argument.

Finally we come to appellant's argument that the evidence does not support the award finding that claimant's disability was permanent. In order that this argument be given fair consideration, it will be necessary to quote from the evidence.

Dr. Kenton D. Leatherman, introduced as a witness by Rule, gave the following testimony:

"13—Doctor, will you state whether or not you have an opinion at this time as to whether or not Mr. Rule would be able to engage in any work which would require heavy manual labor such as lifting, bending, stooping or repetitive motion?

"A—Yes. In my opinion this man should not engage in any activities of this type and should continue with the use of the back brace and should do only light duty activity.

"14—All right. Now, Doctor, have you at this time arrived at any rating of his impairment—medical impairment function?

"A—Yes, it would be my opinion that this man presently is fifty per cent disabled on a functional impairment basis.

"15—Does this extend to the body as a whole?

"A—Yes, sir; it would.

* * * * * *

"17—Has he, in your opinion, reached maximum improvement?

"A—No, sir; he has not.

* * * * * *

"38—Yes. But now you don't believe he had reached his maximum as far as improvement?

"A—That's right.

* * * * * *

"47—Do you anticipate that the patient will completely recover from an injury of this type?

"A—Well, I just don't think I could state that one way or another with any medical certainty. I think he will just have to be observed and his clinical course followed. I think it is too early to tell.

* * * * * *

"50—Now, if since the patient saw you on November 6th, if he has returned to work, at work that of the nature you suggest, does that indicate to you that the patient is improving?

"A—Well, I just again—I don't think I could say that one way or another until I see him again.

"51—Well, now, Doctor, this may be a little bit of a similar question to what I asked you, but I want to make the Court—or Board, as clear as we can. Are you of the opinion that after this exercise you have prescribed is religiously followed and after a reasonable period of time elapses that there will be no permanent disability from the injury?

"A—Well I just don't think I could state one way or another at this time.

* * * * * *

"53—In other words from your examination and observation of the patient so far you have seen nothing from your— that would definitely indicate that he could not return to his normal work sometime?

"A—Well, I can only say this, that everything considered, I think the man has shown considerable improvement. However, with the appearance of this lumbosacral disk I think I would have to say because of this derangement of it, the prognosis would be guarded at the present time.

* * * * * *

"67—Doctor, I realize that every case varies, but do you have an opinion in

any way as to the healing period of an injury of this kind?

"A—Well, as I stated before, I am encouraged by his clinical progress. However, I have to be guarded on my prognosis because of the x-ray changes in the lumbarsacral disk lesion. So I just don't think we can foresee into the future and tell exactly what the final outcome of this man will be.

"68—Now, was your diagnosis of fifty per cent disability, was that to the anatomy or was that as far as occupation?

"A—Well, I think it is actually both right at the present time. I think he is functionally fifty per cent disabled in all of his activities whether he be at home carrying out his usual duties of physical activities required of a man in the household or whether he be at work where I have advised limited duty and wearing a brace and that he not lift very heavy weights."

The only other medical evidence was given by Dr. E. Jeff Justis, Jr., also presented by claimant. We quote from his testimony:

"Q. Just to clarify this for the Board, Doctor Justis, you do not think that any type of permanent disability will result from this injury?

"A. I don't feel that he should have any permanent impairment of function.

*   *   *   *   *   *

"Q. Now, in answer to the question by Mr. Brien you said that you would not expect him to have any residual impairment of function. At this stage are you able to say that he definitely will not have any residual disability?

"A. Since he is not asymptomatic it is impossible to state what the future would hold completely."

No medical evidence was offered by appellant.

Of course the claimant testified he could not perform the work he was doing when injured.

■ The weight to be given the medical evidence was for the Board to determine. It had the right to believe or disbelieve the evidence of Dr. Justis on the question of permanency. City of Olive Hill v. Parsons, 306 Ky. 83, 206 S.W.2d 41. The evidence of Dr. Leatherman on the extent of claimant's disability is clear and positive. However, he "guarded" against giving a prognosis of claimant's condition. His testimony connotes a belief that some degree of permanency is probably present.

■ Certainly all the evidence establishes that claimant had a substantial injury and some disability. There was no evidence that he did not have some disability. Dr. Justis' expressed opinion that claimant should recover in about six weeks was based upon the hypothesis that claimant had a simple sprain. Dr. Leatherman gave evidence of a much more involved condition of claimant's spine.

It is concluded that the evidence supports the award; that claimant sustained a "permanent injury of appreciable proportions." By way of speculation, it may be that an open-end award would have been more appropriate.

■ Appellant's argument that claimant is not entitled to compensation because of his earning as much or more at the time the case was being prepared as he was at the time of his injury has been rejected. See Hawkins Brothers Coal Company v. Thacker, Ky.App., 468 S.W.2d 256 (1971).

The judgment is affirmed.

All concur.