**Sara Beth TRUMAN, Appellant**

**v.**

**Amanda Marie LILLARD, Appellee.**

**No. 2012–CA–000160–ME.**

Court of Appeals of Kentucky.

Nov. 2, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 25, 2013.

Discretionary Review Denied by Supreme Court Aug. 21, 2013.

Julie Shadoan, Bowling Green, KY, for Appellant.

Robin R. Slater, Lexington, KY, for Appellee.

Before NICKELL, TAYLOR and VANMETER, Judges.

## OPINION

NICKELL, Judge:

Sara Beth Truman has appealed from the Fayette Circuit Court's denial of her motion for joint custody, visitation and to set child support in relation to the adopted child of her former partner, Amanda Marie Lillard. After a careful review, we affirm.

Truman and Lillard were in a committed relationship for a number of years beginning in 2002 when they met in Bowling Green, Kentucky. Almost immediately, the two moved in together. They held themselves out as a couple to their community and friends, commingled funds, and generally treated one another as spouses. The pair had a commitment ceremony on June 10, 2006, and six days later Lillard's biological nephew was born. The child would ultimately become the center of the dispute at bar.

On December 16, 2006, Lillard obtained temporary guardianship of Thomas because his biological parents [1] could no longer care for him. Truman was not included as a party in the guardianship proceedings. Although Lillard and Truman had discussed the possibility of starting a family, there were no impending plans to do so since both were full-time students. Nevertheless, because he was her nephew and was in need of a healthy home, Lillard intended to adopt Thomas and raise him as her own. To that end, she engaged an attorney to complete the adoption process. Lillard and Truman were acutely aware that most likely they could not jointly adopt the child under the laws of this Commonwealth. The adoption was finalized in 2008. Thomas lived with Lillard and Truman throughout this time and Truman assisted in rearing the child. No legal steps were taken to set up parenting rights in Truman. In fact, only one document was produced which indicated in any way that Truman was a parent to Thomas.[2] The child referred to each as "Mom"

---

1. Thomas's parents were Lillard's brother and his girlfriend.

2. At some point, Lillard and Truman relocated to Oxford, Mississippi. Thomas was enrolled in a nursery school associated with the University of Mississippi where Truman was employed. Testimony revealed that due to her employment status, Thomas was entitled to a small reduction in tuition. Further, it was established that the school actively sought to increase diversity in its enrollment and the parties believed that the child of a gay couple would have a greater chance of being

or "Mommy" without objection. Lillard and Truman continued to utilize a joint checking account and commingled all of their funds for the benefit of the trio. Thomas created a strong bond with both women and their families.

Unfortunate difficulties arose in the relationship between Lillard and Truman. In February of 2010, Truman vacated the residence the two had jointly occupied in Mississippi. Between February and April of 2010, Truman came to the residence they had shared to help out with Thomas while Lillard was traveling to Kentucky. In mid-April, Lillard and Thomas relocated to Lexington, Kentucky. Shortly prior to the move, Truman allegedly attempted to take Thomas without Lillard's consent.[3] Because she felt Truman had no right to take the child, Lillard contacted the police to assist in stopping Truman from doing so. Upon completing her move to Lexington with Thomas, Lillard sought a domestic violence order alleging Truman had assaulted her some weeks earlier in Mississippi and was continuing to harass her. A civil order prohibiting contact between the parties was entered on June 11, 2010. Although Truman attempted to request visitation of Thomas by utilizing third parties, Lillard ceased all communications and refused to allow Truman to spend any time with Thomas.

On May 10, 2010, Truman filed a petition in the Fayette Circuit Court seeking joint custody, liberal visitation and volunteered to pay child support for Thomas. A brief hearing was conducted on October 22, 2010, based on Truman's subsequent motion for temporary orders. At that hearing, visitation was allowed based on an agreement between the parties. Shortly thereafter, Lillard again relocated with the child, returning to Bowling Green. On November 15, 2010, Lillard sought a transfer of the instant matter to the Warren Circuit Court based on her recent change of residence. Truman objected to the transfer because an evidentiary hearing was scheduled in Fayette Circuit Court for November 30 and she feared further continuances would only complicate and delay the matter. The motion for transfer was denied.

The trial court convened an evidentiary hearing on November 30, 2010. Prior to the hearing, the trial court limited the issues to be presented to only whether Lillard had waived her superior right to custody of Thomas pursuant to the analysis set forth in *Mullins v. Picklesimer*, 317 S.W.3d 569 (Ky.2010). Following testimony from several witnesses and arguments from counsel, the trial court orally ruled that Lillard had not waived her superior right to custody and thus, Truman was not entitled to the relief she sought and stated several reasons on the record for her decision. No mention was made by the trial court as to visitation or child support. No written order was entered.

Nearly nine months later, on August 25, 2011, Truman petitioned the court for a status hearing and entry of a written order memorializing the verbal ruling made following the evidentiary hearing. On September 19, 2011, the trial court entered its findings of fact and conclusions of law consistent with the earlier ruling. Truman subsequently filed motions to alter, amend or vacate the September 19 order, for a

accepted into the program. To that end, the application for admission into the nursery school referenced Lillard and Truman as Thomas's "parents."

**3.** Testimony revealed Lillard and Truman were embroiled in an altercation at Lillard's residence. Truman decided to end the confrontation by leaving the premises. She unsuccessfully attempted to take Thomas with her as she left.

new trial, and for specific findings of fact regarding visitation. After hearing arguments and permitting the parties to submit proposed findings of fact, the trial court entered new and final findings of fact, conclusions of law and order which determined Lillard did not waive her superior right to custody, found Truman had no custodial rights to Thomas, denied the request for visitation, and denied the motion for a new trial. This order did not mention child support. This appeal followed.

On appeal, Truman raises four allegations of error in seeking reversal of the trial court's ruling. First, she alleges the trial court erred in failing to transfer the matter to the Warren Circuit Court. Second, she contends the trial court failed to make sufficient findings of fact on the issues of visitation and child support. Third, she argues the trial court incorrectly relied on *Picklesimer* when deciding the visitation issue. Finally, Truman contends the trial court's findings of fact on the custody issue were unsupported by sufficient evidence.

■ Truman's first allegation of error is that the trial court erred in failing to transfer the case to the Warren Circuit Court as requested by Lillard. This argument is completely inconsistent with her actions in the trial court. When Lillard moved to transfer the matter, Truman objected to the motion and successfully persuaded the trial court to retain jurisdiction. We hold that Truman is judicially estopped from now challenging the trial court's action which was consistent with the relief she sought in that court. Judicial estoppel is a principle which considers "any voluntary act by a party, with the knowledge of the facts, by which he expressly or impliedly recognizes the validity and correctness of a judgment will operate

as a waiver of his right to challenge the error, such as where he receives affirmative relief under the judgment or takes a position inconsistent with his right of review." *Hisle v. Lexington–Fayette Urban County Gov't,* 258 S.W.3d 422, 434 (Ky. App.2008). It would be inherently unfair to now permit Truman to challenge the trial court's determination and we refuse to allow her to do so.

■ Next, Truman argues the trial court failed to make sufficient and specific findings of fact on the visitation and child support issues. Truman contends that even though the trial court amended its findings to include matters raised in her post-trial memorandum and proposed findings of fact related to visitation, the trial court failed to include treatment of all of the evidence adduced at trial. We disagree.

The trial court initially entered findings of fact and conclusions of law which contained no reference to the visitation issue. When this deficiency was called to the trial court's attention by Truman's motion for specific findings, the trial court revised its previously entered order to include a discussion and appropriate findings on the omitted issue. Although Truman concedes the trial court took these actions, she contends the amended order failed to address all of the issues she had raised in her post-judgment motion.

■ Unless the findings are clearly erroneous, we are not permitted to substitute our judgment for that of the trial court. CR[4] 52.01. Additionally, if the trial court fails to make a finding on an essential issue, the matter may be reversed or remanded. CR 52.04. However, we do not believe a trial court's findings of fact must specifically mention each and every piece of evidence or argument of counsel to pass muster. Such a require-

---

4.  Kentucky Rules of Civil Procedure.

ment would be unduly burdensome on the courts and litigants and serve no justifiable purpose. Here, the trial court entered a written order wherein it engaged in the required "good faith effort at fact-finding," *Keifer v. Keifer,* 354 S.W.3d 123, 125 (Ky. 2011), and complied with the mandates of CR 52.01. Contrary to Truman's assertion, the trial court's failure to mention every piece of evidence cited in her post-judgment motion for further findings does not render the ensuing order infirm. The findings were sufficient and remand is unnecessary.

■ Third, Truman argues the trial court erroneously concluded that *Picklesimer* was the controlling case on the visitation issue. She contends the requirement of "waiver" as set forth in that opinion applies only to custody determinations and is inapplicable to a trial court's determination on the separate issue of visitation rights, citing *B.F. v. T.D.,* 194 S.W.3d 310 (Ky.2006). She alleges the trial court should have relied on the *in loco parentis* doctrine set forth in *B.F.* to determine her rights as a non-parent to visit with Thomas. We again disagree.

■ As Truman correctly notes, in *B.F.,* our Supreme Court stated the doctrine of *in loco parentis* had traditionally been utilized in determining visitation rights. However, Truman fails to observe that the very next sentence of the opinion explains that the statute upon which the *in loco parentis* doctrine was based was repealed in 1980, and passage of the now-controlling *de facto* custodian statute, KRS [5] 403.270, severely restricted the trial court's discretion in permitting interested parties to intervene in child custody and visitation matters. Thus, it is clear that the *in loco parentis* doctrine is no longer applicable in these matters. Truman's citations to non-

binding decisions from other jurisdictions are unpersuasive. Under our current statutory scheme, non-parents may attain standing to seek custody or visitation of a child only if they qualify as *de facto* custodians, if the parent has waived her superior right to custody, or if the parent is conclusively determined to be unfit. *Picklesimer,* 317 S.W.3d at 578. The trial court was correct in finding *Picklesimer* to be controlling and following the mandates set forth therein.

■ Finally, Truman contends the trial court's findings of fact relative to the custody issue were unsupported by sufficient evidence and are therefore infirm. She argues the trial court improperly distinguished the facts at bar from those in *Picklesimer* and completely disregarded "a plethora of evidence" supportive of her position. She asserts the trial court gave undue weight and credibility to Lillard's testimony and evidence. Therefore, she believes reversal and remand are required. Our review of the record reveals no such relief is warranted.

■ The standard of appellate review of questions regarding a trial court's findings of fact is well-established. Questions as to the weight and credibility of a witness are purely within the province of the court acting as fact-finder and due regard shall be given to the court's opportunity to judge the witness's credibility. CR 52.01; *Sherfey v. Sherfey,* 74 S.W.3d 777 (Ky.App. 2002) (*overruled on other grounds by Benet v. Commonwealth,* 253 S.W.3d 528 (Ky. 2008)). Factual determinations made by the circuit court will not be disturbed on appeal unless clearly erroneous. CR 52.01. Findings of fact are not clearly erroneous if supported by substantial evidence. *Sherfey,* 74 S.W.3d 777. If the testimony before the trial court is conflict-

---

5. Kentucky Revised Statutes.

ing, as in this case, we may not substitute our decision in place of the judgment made by the trial court. *R.C.R. v. Commonwealth Cabinet for Human Resources*, 988 S.W.2d 36 (Ky.App.1998).

Trial courts are vested with broad discretion in matters concerning custody and visitation. *Futrell v. Futrell*, 346 S.W.2d 39 (Ky.1961); *Drury v. Drury*, 32 S.W.3d 521, 525 (Ky.App.2000). In the absence of an abuse of discretion, we will not disturb a trial court's decision. *Young v. Holmes*, 295 S.W.3d 144, 146 (Ky.App. 2009). "Abuse of discretion in relation to the exercise of judicial power implies arbitrary action or capricious disposition under the circumstances, at least an unreasonable and unfair decision." *Sherfey*, 74 S.W.3d at 783 (internal quotation marks omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999) (citation omitted); *see also Kuprion v. Fitzgerald*, 888 S.W.2d 679, 684 (Ky.1994). The test is not whether we as an appellate court would have decided the matter differently, but whether the trial court's rulings were clearly erroneous or constituted an abuse of discretion. *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky.1982).

Truman recounts a good deal of the testimony she presented at the hearing as support for her argument that the trial court erred in its assessment. Essentially, Truman contends the trial court's factual findings must be incorrect since they did not follow the testimony and evidence she presented. She asserts that the trial court should have assessed the credibility of the witnesses and weighed the evidence presented differently.

"It is within the province of the fact-finder to determine the credibility of witnesses and the weight to be given the evidence." *Uninsured Employers' Fund v. Garland*, 805 S.W.2d 116, 118 (Ky.1991) (citing *Gen. Tire & Rubber Co. v. Rule*, 479 S.W.2d 629 (Ky.1972)). Further, as we previously stated, an "[a]buse of discretion in relation to the exercise of judicial power implies an arbitrary action or capricious disposition under the circumstances, at least an unreasonable and unfair decision." *Sherfey*, 74 S.W.3d at 783.

We discern no abuse of discretion by the trial court. The court utilized the correct legal standard in its review of the evidence presented and placed substantial weight on the actions—and inactions—of the parties during the course of their relationship relative to Thomas's care and upbringing. The trial court orally expressed sympathy for Truman's plight, chastised Lillard for "minimizing" Truman's role in Thomas's life and rearing, and seemed genuinely unhappy with the decision it was forced to make based on the state of the law as currently written. Nevertheless, the court carefully analyzed and set forth its findings of fact and conclusions of law in a well-written ten-page order. The court, in its discretion, determined Lillard had not waived her superior right to custody and that Truman had no legal basis entitling her to custody or visitation with the child. "While some of the evidence conflicted with the trial court's conclusions, and a different trial court or a reviewing appellate court might disagree with the trial court, the standard on appellate review requires a great deal of deference both to its findings of fact and discretionary decisions." *Frances v. Frances*, 266 S.W.3d 754, 758 (Ky.2008).

Although we appreciate the substantial and significant relationship Truman had with Thomas, she was not his parent, she could not qualify as a *de facto* custodian, and he resided with his only parent, Lillard. As the trial court correctly and as-

tutely noted, this case serves as an illustration of "the exception to *Mullins,* where we distinguish a non-parent truly acting in the capacity as a parent from the many people who may love, care for and support a child.... Not every person who genuinely loves and cares for a child gains custodial rights; waiver requires significantly more." There was no error.

For the foregoing reasons, the judgment of the Fayette Circuit Court is affirmed.

ALL CONCUR.