RENDERED: JUNE 14, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0564-MR

JOHN THRASHER                                                          APPELLANT

APPEAL FROM WAYNE FAMILY COURT
v.       HONORABLE JENNIFER UPCHURCH EDWARDS, JUDGE
ACTION NO. 22-CI-00097

JEREMY CRISWELL, JEANNIE
CRISWELL AND JADE
THRASHER                                                               APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ECKERLE, KAREM, AND LAMBERT, JUDGES.

KAREM, JUDGE: John Thrasher appeals from the Wayne Family Court's findings of fact, conclusions of law, and order finding him unfit for custody of his minor child and awarding custody to the child's maternal grandfather and step-grandmother. Upon careful review, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

John Thrasher and Jade Thrasher are the biological parents of E.T.,[1] who was born in October of 2021. John and Jade got married on October 27, 2021, and initially resided with John's parents, Jimmy and Marie Thrasher. In December 2021, they moved in with Jade's father and stepmother, Jeremy and Jeannie Criswell. John and Jade had marital problems and at the end of March or early April 2022, John moved out of the Criswells' home.

Three separate actions involving E.T. then commenced: a dependency, neglect, and abuse (DNA) action brought by the Wayne County Attorney on behalf of the Criswells; a dissolution of marriage action brought by John; and a custody action brought by the Criswells.

The DNA action was initiated on April 12, 2021, when the Wayne County Attorney filed an emergency petition on behalf of the Criswells, alleging neglect of E.T. by John and Jade and seeking her temporary removal. The family court entered an order granting temporary custody to the Criswells and timesharing for John and Jade.

On April 18, 2022, John filed a petition for dissolution of his marriage to Jade and for custody of E.T.

---

[1] Kentucky Rules of Appellate Procedure (RAP) 5(B)(2), requires the use of initials instead of a name in cases involving juveniles, allegations of abuse and neglect, termination of parental rights, mental health, and expungements.

On May 3, 2022, the Criswells filed a petition for third-party custody of E.T., contending they were *de facto* custodians or, in the alternative, that John and Jade were unfit parents.

On August 23, 2022, the family court entered an order dismissing the petition in the DNA action and leaving in place the existing custody arrangement, with the Criswells as temporary custodians and the parents exercising temporary timesharing, pending the final hearing in the Criswells' custody action.

On September 14, 2022, the family court entered an order dissolving John and Jade's marriage. Issues relating to E.T.'s custody were bifurcated from the dissolution action.

On October 30, 2022, before the final hearing on custody, John was involved in a one-vehicle accident. According to the arrest citation, his truck was found upside-down beside the highway. It was alleged that his passenger, who was thirteen years of age, had consumed alcohol provided to him by John. John failed a field sobriety test, and the results of his blood test were still pending at the time of the final hearing. He was charged with first-degree driving under the influence (DUI), unlawful transaction with a minor in the third degree, and wanton endangerment in the second degree. Upon motion by the Criswells, the court ordered John's visitation with E.T. to be supervised by his parents.

The final hearing on custody was conducted on November 21, 2022. Jade filed an entry of appearance in the action and expressed her consent to the Criswells' petition for custody.

The family court thereafter entered its findings of fact, conclusions of law, and order. It determined that the Criswells did not qualify as *de facto* custodians. On the date John filed his petition for custody in the underlying DNA action, E.T. was not yet six months of age and therefore the Criswells could not meet the six-month period necessary to qualify as *de facto* custodians under Kentucky Revised Statutes (KRS) 403.270.

The court did conclude, however, that the Criswells had shown by clear and convincing evidence that John was an unfit parent. It found that John and Jade's behavior created a substantial risk of physical injury to E.T., due to John's alcohol abuse and his provision of alcohol to minors; John and Jade's physical violence against each other and family members; and John's untreated mental health issues and threats of self-harm. The court also found that Jade and John failed to provide essential care for E.T. In regard to John, this finding was based on evidence of his reluctance to work and his failure to use any income he did earn to support E.T.; his failure to provide housing for E.T.; and his failure to take an active role in parenting E.T.

The family court granted sole custody of E.T. to the Criswells. Jade was granted visitation to be supervised by the Criswells. John was granted visitation every other weekend to be supervised by Jimmy or Marie Thrasher until he completed substance abuse and mental health assessments and tendered written proof to the Court that he has completed the recommendations resulting from those assessments. Upon tendering this proof, his visitation would be unsupervised. John was also granted holiday visits with E.T. on Thanksgiving, Christmas Day, Easter Sunday, E.T.'s birthday, and Father's Day.

This appeal by John followed.

## STANDARD OF REVIEW AND LEGAL FRAMEWORK

In reviewing a child-custody award, the appellate standard of review includes a determination of whether the factual findings of the family court are clearly erroneous. A finding of fact is clearly erroneous if it is not supported by substantial evidence, which is evidence sufficient to induce conviction in the mind of a reasonable person. Since the family court is in the best position to evaluate the testimony and to weigh the evidence, an appellate court should not substitute its own opinion for that of the family court. If the findings of fact are supported by substantial evidence and if the correct law is applied, a family court's ultimate decision regarding custody will not be disturbed, absent an abuse of discretion. Abuse of discretion implies that the family court's decision is unreasonable or unfair. Thus, in reviewing the decision of the family court, the test is not whether the appellate court would have decided it differently, but whether the findings of the family court are clearly erroneous, whether it applied the correct law, or whether it abused its discretion.

-5-

*B.C. v. B.T.*, 182 S.W.3d 213, 219-20 (Ky. App. 2005) (footnotes and citations omitted).

"Parents of a child have a fundamental, basic, and constitutional right to raise, care for, and control their own children." *Mullins v. Picklesimer*, 317 S.W.3d 569, 578 (Ky. 2010), *as modified on denial of reh'g* (Aug. 26, 2010). When, as in this case, non-parents do not meet the statutory definition of *de facto* custodians under KRS 403.270, they "must prove either of the following two exceptions to a parent's superior right or entitlement to custody: (1) that the parent is shown by clear and convincing evidence to be an unfit custodian, or (2) that the parent has waived his or her superior right to custody by clear and convincing evidence." *Id.* (citations omitted).

Clear and convincing proof does not necessarily mean uncontradicted proof; rather, "it is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people." *M.L.C. v. Cabinet for Health and Family Services*, 411 S.W.3d 761, 765 (Ky. App. 2013).

The type of proof necessary to show a parent to be an unfit custodian is set forth in *Davis v. Collinsworth*: "(1) evidence of inflicting or allowing to be inflicted physical injury, emotional harm or sexual abuse; (2) moral delinquency; (3) abandonment; (4) emotional or mental illness; and (5) failure, for reasons other

than poverty alone, to provide essential care for the [child]." *Davis v. Collinsworth*, 771 S.W.2d 329, 330 (Ky. 1989). The Kentucky Supreme Court has stated, in an unpublished opinion, that there is no requirement that every factor listed in *Davis* must be found in order to find a parent unfit. *Knight v. Young*, No. 2008-SC-000404-DG, 2010 WL 252246, at *4-5 (Ky. Jan. 21, 2010). "We now state clearly that proof of all five factors listed in *Davis* is not required for a finding of parental unsuitability; rather, *Davis* identifies several appropriate types of evidence relevant to a determination of whether a parent is 'suited to the trust' to the extent that the parent should enjoy a superior right of custody." *Id*. at *4. Essentially, the nonparents must prove by clear and convincing evidence "that the parent has engaged in conduct similar to activity that could result in the termination of parental rights by the state." *Moore v. Asente*, 110 S.W.3d 336, 360 (Ky. 2003).

The grounds for involuntary termination of parental rights is set out in the tripartite structure of KRS 625.090, which requires the court to find by clear and convincing evidence, first, that the child is, or has previously been adjudged to be, an abused or neglected child, KRS 625.090(1)(a); second, that termination would be in the best interest of the child, KRS 625.090(1)(c) and KRS 625.090(3); and third, the existence of one or more of eleven listed factors, KRS 625.090(2).

## ANALYSIS

John challenges both the sufficiency of the evidence supporting the family court's findings and its compliance with the statutory and legal framework. He contends that the court failed to analyze or even mention the factors set forth in *Davis* or the grounds set forth in KRS 625.090, and instead found only that John and Jade's behavior created a substantial risk of physical harm to E.T., based on evidence of the couple's frequent yelling and arguing, their threats of self-harm, and John's recent DUI charge.

Although the family court's order does not specifically reference either KRS 625.090 or the *Davis* factors, its findings are fully in accordance with the standards established therein. The family court's findings comply with all three parts of KRS 625.090, in that clear and convincing evidence supported a finding that E.T. met the definition of an abused or neglected child, as defined in KRS 600.020(1); with KRS 625.090(1)(a)2.; with KRS 625.090(2)(e) and (g); and that it was in her best interest to award custody to the Criswells under KRS 625.090(3)(d) and (f). The court's findings complied with *Davis* in that the court found that John has expressed suicidal thoughts and suffers from untreated mental illness and that he has failed, for reasons other than poverty alone, to provide essential care for E.T. Moreover, its finding that John and Jade's behavior created

-8-

a substantial risk of physical harm to E.T., was supported by substantial evidence and relates directly to KRS 625.090(1).

Under the first part of KRS 625.090, the circuit court must find that the child has been adjudged an abused or neglected child as defined in KRS 600.020(1) or make such a finding itself. KRS 600.020(1) defines an abused or neglected child in pertinent part to include a child whose health or welfare is harmed or threatened with harm when her parent "[c]reates or allows to be created a risk of physical or emotional injury . . . by other than accidental means[,]" KRS 600.020(1)(a)2.; or "[c]ontinuously or repeatedly fails or refuses to provide essential parental care and protection for the child[.]" KRS 600.020(1)(a)4. The latter definition is consonant with the fifth *Davis* factor, "failure, for reasons other than poverty alone, to provide essential care for the children." 771 S.W.2d at 330.

The family court found that John and Jade engaged in behavior that created a substantial risk of physical injury to E.T. The court's findings related to John's drinking and to physical violence. The court found that John uses alcohol on a regular basis and has provided alcohol to minors on several occasions. Jade's mother testified that she smelled alcohol on John when he was in their home and that he provided and drank alcohol with Jade's teenage brothers on several occasions at the Criswells' home without their parents' knowledge. The court also

-9-

referenced, while acknowledging that he had entered a plea of not guilty, John's pending criminal charges of DUI and unlawful transaction with a minor.

As further evidence that John and Jade created a risk of physical harm to E.T., the family court described their multiple acts of violence towards one another and other family members. The family court did not believe John's statement that he and Jade merely engaged in playful wrestling and that Jade bruises easily. "Questions as to the weight and credibility of a witness are purely within the province of the court acting as fact-finder and due regard shall be given to the court's opportunity to judge the witness's credibility." *Truman v. Lillard*, 404 S.W.3d 863, 868 (Ky. App. 2012). Jade, Jade's mother, and Jade's brothers testified to frequent yelling and arguing between Jade and John. Jade and her mother testified that Jade had observable bruising on her arm and a bite mark on her back on at least one occasion. In his testimony, John admitted that he bit Jade. At least one of these heated arguments between John and Jade occurred while Jade was holding E.T. Jade also testified to a physical fight between John and his father, Jimmy Thrasher, because Jimmy was upset that John and Jade were not being proper parents to E.T.

The family further found that John's mental health issues and threats of self-harm place E.T. at risk of physical and emotional harm. John threatened to harm himself on several occasions, texted Jeannie Criswell he was going to kill

himself, and had been admitted to Eastern State Hospital in the past, following a suicide attempt. There was no evidence presented that he was receiving any mental health treatment.

These findings of the family court comply with the requirements of KRS 625.090(1) and are supported by clear and convincing evidence in the record.

Additionally, the family court made findings supported by clear and convincing evidence for the existence of two grounds under KRS 625.090(2), which support a termination of parental rights upon a finding that "the parent, for a period of not less than six (6) months, has continuously or repeatedly failed or refused to provide or has been substantially incapable of providing essential parental care and protection for the child and that there is no reasonable expectation of improvement in parental care and protection, considering the age of the child[,]" KRS 625.090(2)(e); and "the parent, for reasons other than poverty alone, has continuously or repeatedly failed to provide or is incapable of providing essential food, clothing, shelter, medical care, or education reasonably necessary and available for the child's well-being and that there is no reasonable expectation of significant improvement in the parent's conduct in the immediately foreseeable future, considering the age of the child[.]" KRS 625.090(2)(g).

The family court's findings focus on the fact that John and Jade almost completely abdicated every aspect of E.T.'s care to her grandparents. E.T.

suffered from jaundice after her birth and had to remain in the hospital for an extended period.  John and Jade both left and returned home while Jeannie Criswell stayed with the baby.  While John and Jade were residing with the Thrashers, they provided some, but minimal, day-to-day care for E.T.  After they moved in with the Criswells, Jeannie Criswell provided primary care for E.T.  Jeannie, who works full-time, arranged childcare for E.T. with her sister.  Jeannie regularly woke up at 7:30 in the morning to take E.T. to her sister's home and then proceeded to her own employment.  She testified that Jade and John were both still asleep when she got up with E.T., and that they did not get out of bed until the afternoon.  Jeannie testified that E.T.'s bassinet was kept in her and her husband's bedroom and they fed and changed the baby during the night.  John and Jade would occasionally prepare a bottle or change a diaper for E.T., but only when directly asked to do so.  Neither Jade nor John attended doctor's visits for E.T., even though Jeannie made the appointments and told them when they were scheduled.  These findings are all fully supported by testimony in the record.

The family court found that John and Jade are both healthy, able-bodied, and fully capable of gainful employment yet have never provided financially for E.T.  John was employed at his father's business but did not get up to go to work unless his father physically woke him and told him to go.  On occasion, his father even texted Jeannie Criswell to ask John to come to work.

John worked briefly at a gas station in the winter of 2022, but did not use any of his earnings to support E.T. Jeannie testified that he spent his money on eating out and obtaining tattoos.

John challenges the finding that he had failed to provide essential care for E.T. since birth, claiming this finding was controverted by his own testimony and that of his family, but he provides no specific references to any such testimony. Kentucky's Rules of Appellate Procedure require the argument section of the appellant's brief to include "ample references to the specific location in the record . . . pertinent to each issue[.]" RAP 32(A)(4). It is not the job of the appellate courts to scour the record in support of an appellant's argument. *Smith v. Smith*, 235 S.W.3d 1, 5 (Ky. App. 2006). Consequently, we are unable to review this claim.

John further contends that the court failed to make a required finding under *Forester v. Forester*, that there was no reasonable expectation that he would improve his ability to provide parental care and protection going forward, under KRS 625.090(1)(d). *Forester v. Forester*, 979 S.W.2d 928, 930 (Ky. App. 1998). He points to the fact that he was consistently exercising his timesharing, had completed a course of parenting classes, and had submitted to drug and alcohol screens with negative results. He also points out that the court noted that during

the nearly seven months the action was pending before the hearing, John had increased his participation in E.T.'s care.

Although the family court did not use the phrase "no reasonable expectation of improvement," it made ample findings regarding John's future prospects of improvement in providing parental care and protection. John does not have independent housing. He lives with his parents. He testified that they plan to fix up a nearby mobile home for him to reside in with E.T., but they have not started any work on it.

The family court noted that John has only participated in E.T.'s care since the filing of the juvenile action and the custody action. When he was granted visitation in the juvenile action in April 2022, he did assume a more active role, but always alongside his mother, never on his own. His mother is the one who gets up at night with the baby. The court acknowledged that he completed parenting classes and submitted a negative drug screen, both at the request of the Cabinet for Health and Family Services. The family court also noted, however, that this drug screen was administered before his auto accident and the resulting charges. The court observed that John has never been prevented from acting as E.T.'s parent and taking an active parental role, and he is fully capable of doing so: however, he simply has not done so.

-14-

Clear and convincing evidence supports the family court's finding that there was no reasonable expectation that John would improve in providing parental care in the foreseeable future. Even when his custody of E.T. was threatened, he did not significantly alter his behavior, continuing to leave primary caregiving to his mother, not seeking steady employment, and incurring criminal charges associated with the abuse of alcohol and the provision of alcohol to minors.

John contends, in reliance on *Gonzales v. Ball*, an unpublished opinion of this Court, that the evidence was nonetheless insufficient to support a finding of unfitness. *Gonzales v. Ball*, No. 2021-CA-0066-MR, 2022 WL 258599 (Ky. App. Jan. 28, 2022), *discretionary review denied* (Aug. 10, 2022). *Gonzales* is not binding precedent. Furthermore, it is clearly distinguishable, because several of the most significant factual findings regarding the appellant mother's unfitness in that case were unsupported by substantial evidence and consequently clearly erroneous. These included findings that the biological mother's living situation was unstable or that she was a transient, and the finding that bruising on one of her children may have been caused by abuse. A finding that she had a history of drug abuse was correct, but there was no evidence that she was currently using drugs and any testimony to that effect was purely speculative. The Court in *Gonzales* concluded that the finding of unfitness was erroneous because there "was no evidence that the children were abandoned, were in danger, were abused, or lacked

food, clothing, or shelter." *Id.* at *5. By contrast, the family court's findings regarding John are fully supported by evidence that he and Jade were violent towards each other, sometimes when E.T. was present; that John has serious problems with alcohol and his mental health, and that E.T.'s food, clothing, shelter, and care were provided consistently by her grandparents, with minimal input from John. Without their efforts, E.T. would have lacked these necessities.

## **CONCLUSION**

For the foregoing reasons, the findings of fact, conclusions of law, and order granting sole custody of E.T. to Jeremy and Jeannie Criswell is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Donald L. Wilkerson III
Jamestown, Kentucky

BRIEF FOR APPELLEES:

Travis W. Bell
Monticello, Kentucky