RENDERED: MARCH 6, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1009-MR

MIKAYLA RATCLIFF                                        APPELLANT

v.
APPEAL FROM MEADE CIRCUIT COURT
HONORABLE BRUCE T. BUTLER, JUDGE
ACTION NO. 22-CI-00040

KEVIN WETHINGTON AND
CHRISTINE M. WETHINGTON                                APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CETRULO, AND TAYLOR, JUDGES.

ACREE, JUDGE: Appellee Mikayla Ratcliff appeals from a decision of the

Meade Circuit Court granting sole custody of her child ("Child") to Christine and

Kevin Wethington, Child's paternal grandmother and step-grandfather. Finding no

error, we affirm.

# BACKGROUND

On March 3, 2021, Mikayla Ratcliff telephoned Child's paternal grandmother, Christine Wethington, from her home in Michigan. She was upset and suicidal. Mikayla soon brought Child to Christine's home in Kentucky, where she has since lived under the care of Christine and her husband Kevin Wethington. Six days later, Mikayla granted Christine limited guardianship of Child.

The Wethingtons sought custody of Child.[1] A report from the Meade Circuit Court Domestic Relations Commissioner ("DRC") recommended granting temporary custody to the Wethingtons on July 28, 2022. Overruling exceptions from Mikayla, the Meade Circuit Court confirmed the DRC Report in its entirety on February 8, 2023. Mikayla's subsequent motion to reconsider was overruled. Mikayla then filed a motion to alter, amend, or vacate the order, but this, too, was overruled. Mikayla's first direct appeal of the denial was also dismissed because the orders she appealed were not final and appealable.

The DRC conducted a final hearing on January 25, 2024. Mikayla testified and reaffirmed all her prior testimony, including her drug use, a history of domestic violence between her and her romantic partners, a history of mental

---

[1] Brendan Cordle, Child's father, did not participate in the circuit court case beyond filing an affidavit stating he does not wish to be a party and supports his mother's petition to be granted *de facto* guardianship of Child. Christine's last contact with him was in the spring of 2023 and she does not believe it would benefit Child for Brendan to be around.

health issues including Post Traumatic Stress Disorder, Borderline Personality Disorder, and schizophrenia, an admission of anger issues, cutting herself since adolescence, traveling to Florida from Michigan to babysit her ex-boyfriend's children, and an admission that the Wethingtons have been the primary caregivers and sole financial providers for Child since she placed Child in their care. Mikayla also admitted that when she placed Child in the care of the Wethingtons, she did not have a phone number by which she could contact them.

Christine testified that she has concerns about Mikayla being in a caregiving role. According to Christine, Mikayla does not appreciate certain dangers, as evidenced by her allowing Child to go into a river during a visit, which Christine prevented. Christine also testified that when Mikayla brought Child to Christine's care in March of 2021, she presented with cuts on her arm deep enough to necessitate stitches; she believes Child has been exposed to this behavior since Child has imitated the act of cutting on her own arms. As further evidence of Mikayla's lack of support, Christine stated Mikayla never provided financially for Child and never sent any birthday or Christmas gifts. Her visits with Child merely coincided with her visits to Kentucky for court appearances.

Child is doing very well in the Wethingtons' care, according to Christine. She is concerned about changing the status quo by taking Child to Michigan due to the people with whom Mikayla associates.

Mikayla testified that should Child be restored to her care, Child would live with Mikayla and her mother, Christina, in their current home. Mikayla is unsure whether her mother still uses marijuana, though she has in the past.

After the hearing, on March 12, 2024, the DRC filed her proposed Findings of Fact, Conclusions of Law, and Order, stating:

> (1) Appellees are determined to be *de facto* custodians of Child;
>
> (2) Mikayla is entitled to a telephone call or video chat with Child each Wednesday at 6:00 p.m., where no paramours or friends are to participate or be present;
>
> (3) Mikayla is entitled to visitation one weekend per month in the Commonwealth of Kentucky, and no paramours or friends shall be present during the visit; and
>
> (4) Cordle, Child's father shall have no contact with Child.

(Appellee's Brief at 3). It is from the court's adoption and entry of this order that Mikayla now appeals.

## STANDARD OF REVIEW

The test for an appeal of a child custody determination is whether the findings of the trial court were clearly erroneous or that the court abused its discretion. *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008). A court abuses its discretion if its decision is arbitrary, unreasonable, unfair, or unsupported by

-4-

sound legal principles. *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000) (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

## ANALYSIS

Mikayla argues the court erred in adopting the DRC's findings since they were not supported by credible evidence.

Under KRS[2] 403.270, Kentucky courts shall determine custody in accordance with the best interests of the child, guided by eleven factors, including:

> (a) The wishes of the child's parent or parents, and any de facto custodian, as to his or her custody; . . . (c) The interaction and interrelationship of the child with his or her parent or parents, his or her siblings, and any other person who may significantly affect the child's best interests; . . . (e) The child's adjustment and continuing proximity to his or her home, school, and community; (f) The mental and physical health of all individuals involved; . . . [and] (h) The extent to which the child has been cared for, nurtured, and supported by any de facto custodian[.]

KRS 403.270(2). The DRC's findings, listed above, correlate strongly in favor of custody for the Wethingtons. Over the course of multiple hearings and various witnesses, the DRC heard testimony and weighed evidence of Mikayla's concerning behavior and, in contrast, positive behavior from Child during the time she has been with the Wethingtons. Mikayla's strongest evidence of renewed

---

[2] Kentucky Revised Statutes.

circumstances warranting a change of the status quo is that she is currently employed, no longer homeless, and no longer uses marijuana. She also attributed many of her prior mental health struggles to her toxic relationship with Child's father, a relationship she is no longer in. Yet we must note Christina's testimony that Mikayla had him in her home "recently," though the scope of the visit is disputed; Mikayla testified it was not an overnight visit while Christina acknowledged Child's father spent at least two overnights.

Most notably, Mikayla fails to dispute the Wethingtons' testimony that they have been the sole provider for Child. Instead, Mikayla argues that merely because she is not unfit as a parent, she is entitled to have custody of Child restored to her.

This relies upon a misunderstanding of an earlier case from this Court, *Truman v. Lillard*, 404 S.W.3d 863 (Ky. App. 2012). She cites the following excerpt from the case: "Under our current statutory scheme, non-parents may attain standing to seek custody or visitation of a child only if they qualify as de facto custodians, if the parent has waived her superior right to custody, or if the parent is conclusively determined to be unfit." *Id.* at 868. In her view, because she has neither waived her superior right to custody nor does she view herself to be unfit, *Truman* allows custody to be restored to her. Not so. This interpretation ignores the first of three scenarios and the disjunctive conjunction—"or"—which is a

finding that the non-parents qualify as *de facto* parents. This is fatal to Mikayla's argument.

The trial court properly found the Wethingtons to be Child's *de facto* custodians, which under *Truman* is a qualifying scenario for non-parents to be granted custody. Her argument is unsupported by Kentucky law and the record itself.

## **CONCLUSION**

For the foregoing reasons, we affirm the order of the Meade Circuit Court adopting the DRC's Proposed Findings of Fact, Conclusions of Law, and Order.

ALL CONCUR.

BRIEF FOR APPELLANT:

Alan W. Roles
Louisville, Kentucky

BRIEF FOR APPELLEE:

David P. Murn II
Elizabethtown, Kentucky