LAMBERT, D., JUDGE:
Evan Matthew Fry brings this appeal from the Carter Circuit Court's order denying his petition for visitation with his former stepchildren. After review, the circuit court's order is insufficient as to whether Fry has standing to even bring this petition. We therefore vacate the order and remand.
I. BACKGROUND
Fry and April Dawn Caudill married in 2013 and divorced roughly three and one-half years later. No children were born of the marriage. However, prior to the marriage, Caudill had had two children.
Caudill's two children, who resided with their mother and stepfather throughout the marriage, were ages five and six when their mother remarried. Shortly thereafter, their biological father's parental rights were legally terminated. Fry did not adopt the children, though, at any time. By Caudill's own admission in her brief before this *868 Court, she feared adoption would result in the loss of her children's "medical card." Regardless, following the divorce, Fry brought the underlying petition for visitation with his former stepchildren.
Fry's visitation petition was the first time he had presented the issue to the circuit court. The divorce decree incorporated a settlement between the parties, and Fry's rights to visit the children were not decided in that agreement. Nonetheless, the circuit court held a hearing on the matter and heard extensive testimony regarding Fry's involvement in the children's lives. Saliently, Fry claimed that he had developed a close bond with the children during the marriage and that Caudill was contesting visitation out of spite. In support of these claims, Fry explained that he was the sole breadwinner for the family and that he often prepared the children's meals and generally entertained the children by playing video games, taking them hunting and fishing, and watching television with them. Fry further relayed that the children referred to him as "Dad" and even bore his last name. Concerns were also raised regarding the children's hygiene and toileting skills while at school in the wake of the divorce. As for Caudill's motivations, Fry provided deposition testimony wherein she declared her hatred for him.
In rebuttal, Caudill disputed the nature of Fry's relationship with her children. She claimed the relationship was neither as close nor as loving as Fry contended. Caudill testified that she thought the children were afraid of Fry. She also revealed that she and Fry did not see eye to eye when it came to child discipline: she cited a few instances where Fry placed the children in timeout, facing a wall, for long periods of time.
After hearing this testimony, the circuit court ultimately determined that it was not in the children's best interests for Fry to visit them. The circuit court found that Caudill was a fit parent and evidently took her wishes into consideration before finding that the children would be fine without Fry in the picture. This appeal followed.
II. STANDARD OF REVIEW
A trial court's taking and weighing of evidence is reviewed under the deferential abuse of discretion standard; it will not be disturbed absent an unsound or unreasonable result. B.C. v. B.T. , 182 S.W.3d 213, 219 (Ky. App. 2005). Substantial evidence from the record must support any factual determinations undergirding a child custody or visitation decision. CR 1 52.01; Reichle v. Reichle , 719 S.W.2d 442, 444 (Ky. 1986). Conclusory statements-or statements which merely state a conclusion without justification-are not proper findings of fact or conclusions of law because, in addition to appearing arbitrary, they deprive the parties from obtaining meaningful appellate review. See 500 Associates, Inc. v. Nat. Resources and Environmental Protection Cabinet , 204 S.W.3d 121, 132 (Ky. App. 2006) (explaining that sufficient facts supporting conclusions must be set forth so the parties and reviewing courts understand the decision).
III. DISCUSSION
On appeal, Fry argues that the circuit court committed reversible error during its analysis of the children's best interests. Primarily, Fry argues that his relationship with the children was significant enough to effect a waiver of Caudill's superior custody rights. Relying on his testimony as to the quality of his relationship with the children, Fry cites several cases in which a *869 non-parent had a unique relationship with a child, and based on the circumstances surrounding that relationship, overcame the parent's rejection of a prospective relationship between the child and the non-parent. From these cases, Fry attempts to argue the circuit court improperly weighed the evidence. We disagree with this characterization; however, we do find that the circuit court failed to adequately explain why Caudill did not waive her superior rights to custody.
Although the record contains several citations from cases such as Troxel v. Granville , 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed. 2d 49 (2000), B.F. v. T.D. , 194 S.W.3d 310 (Ky. 2006), and Boone v. Ballinger , 228 S.W.3d 1 (Ky. App. 2007), the following is the controlling law in this case:
non-parents may attain standing to seek custody or visitation of a child only if they qualify as de facto custodians, if the parent has waived her superior right to custody, or if the parent is conclusively determined to be unfit.
Truman v. Lillard , 404 S.W.3d 863, 868 (Ky. App. 2012) (citing Mullins v. Picklesimer , 317 S.W.3d 569, 578 (Ky. 2010) ). Truman and Picklesimer are two cases resulting from a line of holdings addressing the rights of non-parents when seeking timesharing and/or custody with biologically unrelated children. For instance, Simpson v. Simpson , 586 S.W.2d 33 (Ky. 1979), first recognized a stepparent's standing to petition for visitation with his former stepchildren. KRS 2 403.270 later abrogated Simpson , however, upon introducing the de facto custodian element into the analysis.[3] Thereafter, the non-parent seeking custody or visitation could demonstrate that he was the sole, primary caregiver of the child for a six-month period.
In addition to the de facto custodian element, Troxell held that parents had a superior right to control who could visit their child. Troxell then explained that parents could waive their superior right to custody if the challenging party could prove by clear and convincing evidence that his presence would serve the child's best interests. From there, Kentucky courts considered non-parent visitation in the context of same-sex couples ( Truman and Picklesimer ) and in situations where paternity was at issue ( Ballinger ).
Here, Fry is correct that there is only one issue in dispute, i.e. , whether Caudill had indeed waived the Troxell presumption. From Fry's own testimony, the circuit court concluded that Caudill is a fit parent and that Fry does not qualify as a de facto custodian. However, a full reversal of the circuit court's findings as to the waiver issue is not warranted.
Based on our review of the record, we cannot find where the circuit court made any actual findings in support of its conclusion that Caudill did not waive her superior rights. Although Picklesimer relied on several factors listed in Vinson v. Sorrell , 136 S.W.3d 465 (Ky. 2004), as a non-exhaustive guide to facilitate this kind of decision, the circuit court did not appear to take any of these factors into account. Rather than decide the issue based on the parties' testimony, the length of the marriage, the children's youth during that same duration, the children's ability to adjust going forward, or some combination thereof, the circuit court simply recited the parties' respective claims and contributed the following:
The Court does find that Petitioner enjoyed a parental relationship with the *870 minor children during his relationship and marriage to Respondent. He engaged them in various activities. However, the Court finds that there is a difference in opinion as to how the parties discipline the children and the mother believes it is in the children's best interest that they not have Court ordered timesharing with the Petitioner.
Whether in the context of child discipline, or any other decision concerning childrearing, conflicts between divorcing parties will surely persist. The mere existence of which, without a clear finding of child endangerment, is not an appropriate basis to determine whether the non-parent has established a significant enough relationship with the children to overcome the parent's wishes. Instead, the focus is on the effect the parties have on the children. If the children do not respond well to Fry's discipline based on Caudill's testimony, and the court finds Caudill a credible witness, this is competent evidence to support a conclusion that Caudill did not waive her superior rights. Since that is not the case, however, we must vacate the judgment and remand for appropriate written findings as to whether Fry has standing to petition for visitation through Caudill's waiver of her superior custody rights.
ACREE, JUDGE, CONCURS AND FILES A SEPARATE OPINION.
THOMPSON, JUDGE, DISSENTS AND FILES A SEPARATE OPINION.

Simpson relied on a determination that the stepparent acted in loco parentis.