RENDERED: JULY 3, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0315-MR

MICKIE KNUCKLES (FORMERLY
TURNER)                                                        APPELLANT


v.          APPEAL FROM JEFFERSON FAMILY COURT
            HONORABLE LAUREN ADAMS OGDEN, JUDGE
                    ACTION NO. 22-CI-501137


JUSTIN TURNER                                                    APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  LAMBERT, McNEILL, AND TAYLOR, JUDGES.

LAMBERT, JUDGE:  Mickie Knuckles appeals from the Jefferson Family Court

Order, entered on August 14, 2023, and amended February 14, 2024, denying her

motion for visitation with K.K., who is the biological child of her former husband,

Justin Turner.  After careful review of Knuckles's brief, the record, and the law,

we affirm.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Knuckles and Turner were previously married, and they have two children in common, a daughter and a son, born in 2012 and 2015, respectively. Turner also has another son, K.K., who was born in June 2011 from a prior relationship. The marriage was dissolved by a September 20, 2022, decree. Incorporated into the decree was the parties' Property Settlement Agreement, wherein they agreed to joint custody and equal time sharing of their children in common, and Knuckles reserved her right to assert standing and to seek visitation with K.K. from the court.

On November 15, 2022, Knuckles filed a barebones motion that, relevantly, requested the court "to conduct a hearing pursuant to the Property Settlement Agreement and *Fry v. Caudill*, 554 S.W.3d 866 (Ky.[ ]App. 2019), to establish visitation and a parenting schedule" for K.K. Attached to the motion was an affidavit from Knuckles asserting that Turner had denied her any contact with K.K. since July 25, 2022, that she was the only real mother K.K. had ever known, and that it was in his best interest for them to have contact.

The court subsequently held a hearing on the motion, which at the start of the proceedings the court characterized as a motion for *de facto* custodian status, before denying it via an August 14, 2023, order. Per the court's order, Knuckles and Turner began dating in September 2010. They met K.K. for the first

time in 2012, and Turner soon had equal shared parenting time with K.K.'s mother. During this period, the parties' daughter was also born. In July 2015, as a result of a dependency, neglect, and abuse (DNA) action against K.K.'s mother, K.K. was placed in Turner's sole custody following a stipulation that she had left the child in the care of her paramour, who spanked him and caused extensive bruising. The parties' second child, a son, was born, and they married in 2016.

Knuckles was active in raising the children, and she worked from home to have more time with them. The children's paternal grandmother resided with the family for several years, and she also provided care for the children. Knuckles had health issues, pre-existing the marriage, including anxiety, depression, and migraines, that often required her to separate herself from the children and rest. Knuckles says she treated K.K. the same as her biological children; however, the court found credible Turner's and the paternal grandmother's testimonies that Knuckles treated K.K. differently, especially when it came to discipline. Knuckles asked to adopt K.K., but Turner told her that it was not an option because K.K.'s mother still provided financial support and thereby had rights to him. In 2016, Knuckles stipulated in a DNA action to abuse for spanking K.K. with a spatula, leaving extensive bruising, after he threw an hours' long tantrum. The parties separated in May 2020, and initially Turner permitted K.K. to visit with Knuckles when she had parenting time with her biological

children. But Turner stopped the visits in July 2022, after Knuckles refused to return the three children as scheduled.

The court then concluded that Knuckles did not qualify as a *de facto* custodian, as defined by Kentucky Revised Statutes (KRS) 403.270(1), because she had cared for K.K. in conjunction with Turner and the paternal grandmother and there was no evidence that she was the primary financial provider, Turner having been employed full-time and K.K.'s mother having paid for his support. The court noted that Knuckles, through counsel, had conceded that Turner did not waive his superior right to custody and that there was no evidence that he was an unfit parent.

From the order denying visitation, Knuckles timely filed a motion to alter, amend, or vacate, pursuant to Kentucky Rules of Civil Procedure (CR) 59.05, which she amended on September 11, 2023. In addition to challenging several of the court's factual findings, Knuckles argued in the motion that the court had "mischaracterized" her *de facto* custodian status. She asserted that the uncontroverted testimony was that she had K.K. for 50% of the time, without assistance from Turner or the paternal grandmother, for well over two years before Turner terminated her time sharing in July 2022. And she further claimed that she paid for and provided for K.K.'s clothing and school supplies even after she stopped being allowed to have contact, and that she paid for everything for two

years while Turner was unemployed.  Finally, she asserted that, although her motion for visitation "initially relied on *Fry*[,]" *supra*, *Krieger v. Garvin*, 584 S.W.3d 727 (Ky. 2019), was controlling caselaw, and she requested that the court apply *Krieger*, "as [w]ell as and in light of *Fry*[,]" and enter a new order.  On February 14, 2024, the court granted the motion in part, correcting four minor or typographical errors.

Knuckles then filed a second motion seeking to alter, amend, or vacate the February 14, 2024, order.  Therein, Knuckles argued that the court still needed to address the impact of *Krieger*, which she asserted was controlling authority that expressly permitted her to have visitation time.  The court denied the motion, finding that *Krieger*'s holding that a couple could jointly qualify as *de facto* custodians, despite the statute's use of the singular "person," had no bearing on the case.  This appeal, filed March 13, 2024, followed.

**STANDARD OF REVIEW**

The test for an appeal of a child custody and visitation determination is whether the findings of the trial court were clearly erroneous or that the court abused its discretion.  *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008) (citing *Eviston v. Eviston*, 507 S.W.2d 153 (Ky. 1974)).  A court abuses its discretion if its decision is arbitrary, unreasonable, unfair, or unsupported by sound legal

principles. *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000) (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

## ANALYSIS

As the Supreme Court of Kentucky stated in *J.S.B. v. S.R.V.*, 630 S.W.3d 693, 701 (Ky. 2021):

> It is a well-established tenet of our jurisprudence that a child's biological parents have a fundamental, basic, and constitutional right to raise, care for, and control their own children. It is perhaps the oldest of the fundamental liberty interests recognized by the United States Supreme Court. However, despite the exalted place that such rights hold, the law also recognizes that there are circumstances where a biological parent's rights are diminished or even forfeited due to his actions (or inaction) or due to legislative policy.

(Internal quotation marks and citations omitted.) To have standing to seek custody or visitation, a nonparent must satisfy the statutory standard for *de facto* custodian status, as set forth in KRS 403.270(1), or "must prove one of two exceptions to a parent's superior right to custody: (1) that the parent is unfit, or (2) that the parent has waived his or her superior rights." *Id.*

A *de facto* custodian is "a person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who within the last two (2) years has resided with the person for an aggregate period . . . of one (1) year or more[.]" KRS 403.270(1). A *de*

*facto* custodian has the same standing as a parent in custody and visitation matters. KRS 403.270(2).

On appeal, Knuckles argues that the family court erred by determining that she was not a *de facto* custodian and then by failing to address and apply *Fry* and *Krieger*, both of which she maintains are dispositive. Before we may reach the merits of her claims, we must address the inadequacies of her brief.[1] For her argument, Knuckles has merely transposed her initial motion to alter, amend, or vacate in its entirety. As such, the argument consists of issues already resolved, including the typographical errors corrected by the court in its February 14, 2024, order, and matters irrelevant to this appeal.

Additionally, in violation of RAP 32(A)(4), Knuckles makes several factual assertions in support of her claim of entitlement to *de facto* custodian status, without the requisite citations to where the evidence may be found in the record.[2] And, although it is not this Court's responsibility to scour the record, *Dennis v. Fulkerson*, 343 S.W.3d 633, 637 (Ky. App. 2011), having reviewed the

---

[1] We must also note that Turner has not filed a brief, which permits this Court to accept Knuckles's "statement of the facts and issues as correct[,]" to reverse the judgment if Knuckles's brief "reasonably appears to sustain such action[,]" or to regard the failure "as a confession of error and reverse the judgment without considering the merits of the case." Kentucky Rules of Appellate Procedure (RAP) 31(H)(3). Given our concerns with Knuckles's brief, we have elected not to impose any penalty.

[2] We further note that, despite repeated statements that the court made incorrect findings, inexplicably, the only citations in the fact section of the brief for anything other than merely procedural matters are to the order on appeal.

hearing, we have determined that many of Knuckles's statements of fact are not supported by the testimony. For example, there was no evidence demonstrating that Knuckles was the sole financial contributor to K.K.'s care for some unspecified period of time while Turner was unemployed or that she had continued to pay for K.K.'s school and clothing.

As the family court correctly concluded, Kentucky law is clear that parenting a child alongside the biological parent does not satisfy the statutory standard for *de facto* custodian status; "[r]ather [a] nonparent must 'literally stand in the place of the natural parent.'" *Mullins v. Picklesimer*, 317 S.W.3d 569, 574 (Ky. 2010) (quoting *Consalvi v. Cawood*, 63 S.W.3d 195, 198 (Ky. App. 2001), *abrogated on other grounds* by *Moore v. Asente*, 110 S.W.3d 336 (Ky. 2003)).

Even considering the two years after Knuckles and Turner separated, we cannot say that the court committed reversible error by concluding that Knuckles was not K.K.'s primary caregiver or financial supporter solely by virtue of the fact that she shared equal physical custody of him with Turner. That Knuckles also provided K.K.'s health insurance for some unspecified period of time that continued through to the hearing and that she paid $200 for K.K.'s school and clothing expenses, again at some unspecified time and for which Turner was required by the Marital Settlement Agreement to reimburse her, does not change our analysis. Knuckles bore the burden of proving that she provided K.K. with the

requisite care and support by clear and convincing evidence, and her proof of equally shared physical custody and unspecified claims of limited financial support are insufficient. Therefore, the court did not err in determining that Knuckles was not a *de facto* custodian.

We shall now consider the merits of Knuckles's claim that the court did not apply dispositive law. On appeal, Knuckles primarily contends that the family court should have granted her visitation of K.K. based on the holdings in *Fry* and *Krieger*. We review issues of law *de novo*. *Smith v. McCoy*, 635 S.W.3d 811, 814 (Ky. 2021) (citing *S. Fin. Life Ins. Co. v. Combs*, 413 S.W.3d 921, 926 (Ky. 2013)).

It is difficult to discern Knuckles's legal position due to her failure to apply or interpret the two disparate cases that she asserts are dispositive. In *Fry*, the Kentucky Supreme Court dealt exclusively with waiver of a parent's superior right to the care, custody, and control of their child due to the special relationship between the child and a former step-parent. 554 S.W.3d at 868-70. While this would seem applicable to the present case, Knuckles specifically stated at the hearing on her motion that she had "never argued that [Turner] had conceded his superior right." Additionally, Knuckles affirmatively argued that she qualified as a *de facto* custodian in the hearing, in her CR 59.05 motions, and in her brief to this Court, wholly ignoring the family court's findings and conclusions as to waiver.

-9-

Finally, Knuckles expressly stated in her September 11, 2023, CR 59.05 motion that *Krieger*, which deals exclusively with *de facto* custodianship status, was the more applicable case. Given the above, we cannot say that the court erred in failing to apply *Fry*.

In *Krieger*, the Supreme Court of Kentucky addressed only whether a non-married couple, neither of whom were the parent of the child, could qualify jointly as a *de facto* custodians. 584 S.W.3d at 728-30. Like the family court, we fail to see the applicability of *Krieger* to this case as the holding does not abrogate, either expressly or by implication, the established bar against a non-parent acquiring *de facto* custodian status for parenting alongside the child's natural parent. *See Mullins*, 317 S.W.3d at 574; *Chadwick v. Flora*, 488 S.W.3d 640, 644 (Ky. App. 2016); and *Brumfield v. Stinson*, 368 S.W.3d 116, 119 (Ky. App. 2012). Accordingly, the court again did not err.

## CONCLUSION

For the foregoing reason, we affirm the judgment of the Jefferson Family Court.

ALL CONCUR.

-10-

BRIEF FOR APPELLANT:                    NO APPELLEE BRIEF FILED.

Timothy Denison
Louisville, Kentucky